***********
The Full Commission reviewed the prior Opinion and Award based upon the record of the proceedings before Deputy Commissioner Holmes and the briefs and oral arguments before the Full Commission. The appealing party has not shown good ground to reconsider the evidence; receive further evidence; rehear the parties or their representatives; or amend the Opinion and Award, except for minor modifications. Accordingly, the Full Commission affirms the Opinion and Award of Deputy Commissioner Holmes, with modifications.
 ***********
The Full Commission finds as fact and concludes as matters of law the following, which were entered by the parties as:
 STIPULATIONS
1. At the time of the alleged injury by accident, the parties were subject to and bound by the provisions of the North Carolina Workers' Compensation Act.
2. The employer/employee relationship did not exist between the parties on or about August 29, 2002, as plaintiff had resigned prior to that date.
3. Plaintiff's average weekly wage is $900.50.
4. Stipulated Exhibit 1, which includes medical records and reports, was offered and accepted into the evidence at hearing before the Deputy Commissioner.
5. Defendants' Motion to Dismiss, with attachments, as submitted to the Industrial Commission on October 14, 2003, and plaintiff's response thereto, are hereby incorporated into the record of this case.
6. All Industrial Commission Forms and Orders from File No. 176465 are hereby incorporated into the record of this case.
7. Plaintiff last worked for defendant-employer on or about October 24, 2001.
 ***********
Based upon all of the competent evidence of record and reasonable inferences flowing therefrom, the Full Commission makes the following:
 FINDINGS OF FACT
1. Plaintiff was last employed by defendant-employer as a truck driver on October 24, 2001.
2. Plaintiff sustained a compensable injury by accident on February 8, 2001.
3. As a result of the February 8, 2001, injury, plaintiff obtained medical treatment that continued up through 2002, which included treatment for neck, back, shoulder, and left arm and hand complaints.
4. Plaintiff received medical and indemnity benefits for the February 8, 2001, injury and settled all further claims for said injury pursuant to an Agreement for Final Compromise Settlement and Release in respect to I.C. No. 176465, which was approved by the Industrial Commission on July 23, 2002. The settlement agreement between the parties references that plaintiff, following his February 8, 2001, injury, sought treatment with Dr. Graves for "neck pain, mid back pain, lower back pain and leftshoulder pain since a work related injury" (emphasis added). Further, the Agreement specifically references plaintiff's complaints of "pain radiating down his left arm into his fourth and fifth fingers" (emphasis added). Thus, the Full Commission finds as fact that plaintiff's left ulnar neuropathy, which is the subject of this claim (I.C. No. 242173), is precluded by the settlement agreement entered into by the parties in respect to I.C. No. 176465.
5. Alternatively, even if plaintiff's current claim was not precluded by the settlement agreement in I.C. No. 176465, the medical evidence of record, as set forth below, is insufficient to show that plaintiff's ulnar neuropathy was causally related to the February 8, 2001, injury, or that plaintiff's work for defendant-employer placed him at an increased risk of developing ulnar neuropathy as compared to the general public.
6. Following the February 8, 2001, injury, plaintiff treated with Dr. Henry Pool, a neurosurgeon, for a period of time beginning on August 29, 2002. Dr. Pool assessed plaintiff with a left-sided ulnar neuropathy and subsequently performed an ulnar decompression on October 30, 2002, "to unpinch the ulnar nerve at the elbow."
7. When asked in his deposition whether tractor-trailer drivers are at a greater risk of developing an ulnar neuropathy, Dr. Pool testified: "That's going to speak more to somebody who's in occupational medicine. I have no personal great direct knowledge of that. I do have anecdotal reports suggesting that, though."
8. By his own testimony, the Full Commission finds that Dr. Pool is not qualified to testify on the issue of increased risk in this case.
9. Dr. Albert Bartko is a physical medicine and rehabilitation physician who treated plaintiff. When asked in his deposition whether truck drivers are at a greater risk of developing an ulnar neuropathy as opposed to the general public, Dr. Bartko testified: "[I]ntuitively, I would say yes, but I don't have any literature to support that. There may be literature that supports that, but I just don't know."
10. There is no evidence in the record that Dr. Bartko has any experience in the care and treatment of truck drivers for ulnar neuropathies or any other conditions. Likewise, there is no evidence in the record that specific literature exists to support the contention that truck driving places an individual at an increased risk of developing an ulnar neuropathy.
11. Dr. John Lee Graves is a general orthopedist who treated plaintiff. When asked in his deposition whether a truck driver is at an increased risk of developing an ulnar neuropathy, Dr. Graves testified: "We treat a lot of truck drivers, and it doesn't seem to be any higher in them than anyone else."
12. Dr. Graves is the only physician to express that he had any experience in the treatment of truck drivers. Accordingly, the Full Commission gives more credibility to the testimony of Dr. Graves on the issues in this case.
13. Dr. Pool testified that he has no concrete opinion as to what caused plaintiff's ulnar neuropathy, but that his opinion was that the cause was multi-factoral.
14. Dr. Bartko testified that plaintiff's condition could be consistent with a truck-driving-type mechanism, but that from a historical standpoint, and the fact that the symptoms began with the onset of back pain, he would assume that plaintiff's condition is probably related to back pain.
15. Dr. Graves testified that he did not think there was any way of knowing for sure whether plaintiff's condition was caused by his work as a truck driver.
16. The evidence that could tend to support a causal connection between the plaintiff's employment as a truck driver and his ulnar neuropathy fails to rise above the level of conjecture and speculation.
17. The Full Commission finds there to be insufficient evidence in the record to support plaintiff's contention that his employment as a truck driver aggravated, significantly contributed to, or was a significant causal factor in his development of an ulnar neuropathy.
18. By the greater weight of the evidence, the Full Commission finds that plaintiff was not at a greater risk of developing an ulnar neuropathy as compared to the general public, due to his employment as a truck driver.
19. By the greater weight of the evidence, the Full Commission finds that neither plaintiff's employment with defendant-employer, nor the February 8, 2001, accident, caused or significantly contributed to plaintiff's ulnar neuropathy.
 ***********
Based upon the foregoing stipulations and findings of fact, the Full Commission reaches the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident on February 8, 2001, arising out of and in the course of his employment. As a consequence of said accident, plaintiff sustained injury to his back, neck, left shoulder, left arm, and left hand. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff received medical care and indemnity payments from defendants for the February 8, 2001, injury. N.C. Gen. Stat. § 97-25.
3. Pursuant to an Order of the Industrial Commission dated July 22, 2002, a settlement was reached in respect to I.C. No. 176465, which absolved defendants of any and all further liability in that matter, as well as the injuries alleged in the present claim. N.C. Gen. Stat. § 97-17.
4. Plaintiff has failed to show, by the greater weight of the evidence, that his ulnar neuropathy is a compensable occupational disease within the meaning of N.C. Gen. Stat. § 97-53(13). Plaintiff failed to produce medical testimony to establish the "increased risk" elements of a claim for a compensable injury under N.C. Gen. Stat. § 97-53(13), and he has failed to establish a causal connection, by the greater weight of the evidence, between his ulnar neuropathy and his employment position. Plaintiff has failed to show by the greater weight of the evidence, that his employment position aggravated, significantly contributed to or was a significant causal factor in his development of an ulnar neuropathy. N.C. Gen. Stat. § 97-53(13).
 ***********
Based upon the foregoing findings of fact and conclusions of law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for benefits is, and under the law must be, DENIED.
2. Each side shall pay their own costs, except that defendants shall pay an expert witness fee of $385.00 to Dr. John L. Graves, $270.00 to Dr. Albert K. Bartko, and $390.00 to Dr. Henry Pool, if not already paid by prior order.
This 4th day of November 2004.
 S/_____________ THOMAS J. BOLCH COMMISSIONER
CONCURRING:
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
 S/_______________ DIANNE C. SELLERS COMMISSIONER